EDWIN A. LOMBARD, Judge.
|! This case arises out of a vehicular accident involving a fire truck owned and op *360 erated by the New. Orleans Fire Department. On appeal, the City of New Orleans (the City) argues that the trial court erred in finding in favor of the plaintiff, awarding damages in the amount of $15,472.16, and dismissing the City’s reconventional demand. After review of the record in light of the applicable law and arguments of the parties, we affirm the judgment of the trial court.

Relevant Facts and Procedural History

On the evening of April 18, 2008, a Nissan Maxima owned by Howard Ross and driven by his daughter, Nicole Ross, collided with a New Orleans Fire Department (NOFD) fire truck at the intersection of Baronne and Girod Streets. The Nissan was insured by State Farm Mutual Automobile Insurance Company (State Farm) and, accordingly, on April 14, 2009, State Farm and Mr. Ross (as plaintiffs) filed suit against Dennard Powell, the driver of the fire truck, and the City, seeking recompense for the sums expended to repair the vehicle. On June 18, 2009, the City filed its answer and a Reconventional Demand naming Ms. Ross, Mr. Ross and State Farm as defendants, asserting that the accident was caused by Ms. Ross’s negligence. In addition, the City filed a Third Party Demand, naming | ¡>the passenger in the Nissan at the time of the accident, Gregory Zeno, as the negligent driver of the vehicle. In both the Reconventional Demand and Third Party Demand, the City sought compensation for damages and repair to the fire truck in the amount of $17,289.67.
The following evidence was adduced at the trial before the district court judge on July 16, 2012. Ms. Ross related that on the evening of the accident, accompanied by her then-boyfriend Gregory[1] Zeno, she drove her father’s car to drop her younger brother off at the “W” hotel for his school prom. After initially dropping him off, her brother called to tell her that he had forgotten his wallet so she returned home, retrieved his wallet, and took it to him. As she was driving home, the accident occurred. Specifically, Ms. Ross was driving in the left lane on Baronne Street towards the river bridge. As she entered the Girod Street intersection with a green light, she saw the fire truck running the red light facing Girod Street. She applied her brakes but the streets were wet and the fire truck struck the front of the Nissan, turning it parallel with Girod Street and catching the side of the Nissan’s passenger door. According to Ms. Ross, Mr. Zeno climbed over her as she was leaning into the steering wheel to exit the vehicle and then pulled her out of the vehicle. Ms. Ross confirmed that her mother was told (when she subsequently arrived on the scene) by one of the firemen that Mr. Zeno was driving the Nissan at the time of the accident. Ms. Ross remembered talking to a female officer who she assumed was with the NOFD after the accident.
Renae Decker testified that on the evening of the incident, she was sitting in her parked car in front of her place of employment at 610 Baronne Street when she |sheard the impact. Movie trailers parked on each side of the street obstructed her view of Girod Street but she could see the signal lights at the intersection. Immediately upon hearing the impact she looked up and saw the red light reflecting off the Sewell Cadillac glass windows on Girod Street, indicating that the traffic on Girod Street had the red light. She got out of her ear, ran to the accident scene, and gave her phone number to the couple in the Nissan after assuring herself no one *361 was hurt. Ms. Decker did not know the couple in the Nissan or any of the firemen on the fire truck. On cross-examination, Ms. Decker confirmed that, at the time of the accident, she had been employed at the Andry Law Firm for ten years and that she had stated in a deposition that she saw a male silhouette driving the Nissan when it passed her at a “decent speed” on Bar-onne Street and that the fire truck was going “extremely fast.” She also conceded that in a statement to State Farm eighteen months after the accident she said she could not see the traffic control light for Baronne Street at the time of the accident. On redirect, she identified a Chase deposit slip with her name and phone number on it that she had given to the couple in the Nissan. She stated that she had never had a business card for the Andry Law Firm.
Officer Jana Thompson of the New Orleans Police Department (NOPD) testified that she investigated the accident and interviewed the driver of the Nissan (Ms. Ross) who told her that she was entering the intersection when the light turned red and she was struck by the fire truck. From the position of the vehicles, Officer Thompson opined that the Nissan had been the first to enter the intersection. On cross-examination, she stated the traffic lights were functioning properly the evening of the accident.
14 Cap tain Robert Tourres of the New Orleans Fire Department (NOFD) testified that he was a passenger on the fire truck on the evening of the accident, trav-elling from the engine house to “the Chiefs quarters” on Girod Street. Captain Tourres related that as the fire truck approached the intersection at Baronne Street, “we had the green light and we were going over the intersection and this car came from the left at a pretty high rate of speed and ran the red light and hit us in the front wheel are, driver’s side.” When asked whether he was certain as to the color of the traffic signal, Captain Tourres responded, “right when it happened I looked at my operator and I asked him; did we have the green light? He said; [sic] yeah. And I turned around to look at the light because it was behind me and we still had the green light and they had the red.” Captain Tourres stated that “some guy” was driving the Nissan at the time of the accident and when the firemen got out of the fire truck to check on the occupants of the Nissan, the couple was still sitting in the car and “said they were all right.” Under questioning, Captain Tourres related that in his report (filled out the day after the accident) he stated the fire truck was crossing the intersection on a green light at the time of the collision. He also identified the diagram he drew for insurance purposes shortly after the accident that was subsequently admitted into evidence.
Dennard Powell, the driver of the fire truck at the time of the accident, was sworn into testify but after the parties agreed to stipulate that he was going to testify that he was the driver of the vehicle, he had the green light, and he entered the intersection first, he was excused from testifying further.
Based upon the evidence and testimony of the witnesses, the trial judge found in favor of State Farm, awarding damages in the amount of $15,472.16, costs, and interest from the date of judicial demand. The reconventional demand |Bfiled by the City was dismissed with prejudice. The defendants appeal this judgment.
On appeal, the City asserts that the trial court committed manifest error when it found no negligence on behalf of State Farm’s insured, Ms. Ross. Specifically, the City argues that (1) the objective evidence indicates that the fire truck was in *362 the intersection when it was struck by the Nissan; (2) it was error for the trial court to not hear the testimony of Mr. Powell; and (3) it was error for the trial court to find the testimony of Ms. Ross and Ms. Decker credible in light of the testimony of Officer Thompson and the physical evidence. In the alternative, the City argues (for the first time on appeal) that this court should divide the liability of the parties on the basis of contributory and comparative fault in light of jurisprudence related to “favored vehicles” and the duty to allow a car already in an intersection when the traffic signal changes to complete the crossing.

Applicable Law

This court may not set aside a trial court’s finding of fact absence manifest error or unless it is clearly wrong; reasonable evaluations of credibility and reasonable inferences of fact will not be disturbed on appeal. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Specifically, under this standard, great deference is given to the credibility determination of the lower court because the fact finder is in the position to observe the witness’s demeanor and tone of voice. Id. at 844-845. Likewise, where there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State through Dept. of Transp. and Dev., 617 So.2d 880, 883 (1993). The issue to be resolved by the reviewing court is not whether the trier of fact was right or | ¿wrong but whether the fact finder’s conclusion was a reasonable one. Housley v. Cerise, 579 So.2d 973 (La.1991).

Discussion

A review of the record indicates that, although there is conflicting testimony as to which vehicle had the green light to proceed through the intersection, the testimony of Ms. Ross and Ms. Decker supports the district court’s factual finding that the driver of the fire truck was the negligent party. The objective evidence, the point of impact between the vehicles and the ultimate stopping point of the vehicles, does not invalidate this credibility determination. As clearly indicated by our standard of review, we cannot substitute our judgment for the trial court’s judgment under these circumstances. The City’s argument that trial court erred for not finding the City’s witnesses more credible based on the City’s interpretation of the evidence is without merit.
The record indicates that after Mr. Powell was sworn in, both parties stipulated as to his testimony, and no one objected to his dismissal without further testimony. Under these circumstances, the City’s argument that the trial court erred in not hearing his testimony is without merit.
Finally, there is no indication in the record or trial transcript that the City raised the issue of comparative fault in the trial court. We do not consider issues raised for the first time on appeal and, in any event, in awarding damages and dismissing the City’s Reconventional Demand and Third Party Demand, the court found the defendants 100% at fault. This finding was not clearly wrong and this argument is without merit.
| -¡Conclusion
The judgment of the trial court is affirmed.
AFFIRMED.

. Inexplicably, the appellee refers to Mr. Zeno as Craig in its brief; the record indicates that Mr. Zeno’s given name is Gregory and he is referred to as "Greg” in Ms. Ross’s testimony.